IN THE IOWA DISTRICT COURT FOR LINN COUNTY, IOWA

| | |
|---|---|
| SIMON'S TRUCKING, INC.,<br>R.J. LEASING, INC.,<br>ADRIAN TRUCKING, INC.<br>HOKER TRUCKING, LLC,<br>J&R TRANSPORT, INC., and<br>HOLLY LITTLE,<br><br>      Plaintiffs.<br><br>vs.<br><br>NAVISTAR, INC.;<br>THOMPSON TRUCK AND TRAILER, INC.,<br>f/k/a HAWKEYE TRUCK AND TRAILER;<br>HUSKY INTERNATIONAL TRUCKS, INC.<br>and<br>CENTRE STATE INTERNATIONAL<br>TRUCKS, INC.<br><br>      Defendants. | LAW NO. _LACV08 4412_<br><br><br>ORIGINAL NOTICE |

TO THE ABOVE NAMED DEFENDANTS:

You are hereby notified that there is now on file in the office of the clerk of the above court a petition in the above-entitled action, a copy of which petition is attached hereto. THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING. Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption for the court, you must file your Appearance and Answer electronically. You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court. FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM: http://www.iowacourts.state.ia.us/Efile FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURTS RULES CHAPTER 16: http://www.iowacourts.state.ia.us/Efile

The Plaintiff's attorneys are Tim Semelroth and John Riccolo, whose address is Suite 1140, 425 Second Street SE, Cedar Rapids, Iowa, 52401 (319) 365-9200.

You are further notified that unless, within 20 days after service of this original notice upon you, you serve, and within a reasonable time thereafter e-file a motion or answer, in the Iowa District Court for Linn County, at the courthouse in Cedar Rapids, Iowa, judgment by default will be rendered against you for the relief demanded in the petition.

EXHIBIT A

If you need assistance to participate in court due to a disability, call the disability coordinator at (319)398-3920 ext. 1105  or email julie.fette@iowacourts.gov.
Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942).
Disability coordinators cannot provide legal advice.

(SEAL)

_____

CLERK OF THE ABOVE COURT
Linn County Courthouse
51 Third Avenue Bridge
Cedar Rapids, IA 52401

NOTE:  The attorney who is expected to represent the defendant should be promptly advised by defendants of the service of this notice.

# STATE OF IOWA JUDICIARY

Case No. LACV084412

County Linn

Case Title  SIMONS TRUCKING INC ET AL VS NAVISTAR INC ET AL

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile



*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 398-3920** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

Date Issued  12/18/2015 01:57:55 PM



District Clerk of Linn          County

/s/ Nicole Flockhart

## IN THE IOWA DISTRICT COURT FOR LINN COUNTY, IOWA

| | |
|---|---|
| SIMON'S TRUCKING, INC.,<br>R.J. LEASING, INC.,<br>ADRIAN TRUCKING, INC.<br>HOKER TRUCKING, LLC,<br>J&R TRANSPORT, INC., and<br>HOLLY LITTLE,<br><br>     Plaintiffs.<br><br>vs.<br><br>NAVISTAR, INC.;<br>THOMPSON TRUCK AND TRAILER, INC.,<br>f/k/a HAWKEYE TRUCK AND TRAILER;<br>HUSKY INTERNATIONAL TRUCKS, INC.<br>and<br>CENTRE STATE INTERNATIONAL<br>TRUCKS, INC.<br><br>     Defendants. | LAW NO. 𝓛 𝓐𝓒 𝓥𝓞 𝟪<br><br>PETITION AT LAW AND<br>JURY DEMAND |

PLAINTIFFS, Simon's Trucking, Inc., R.J. Leasing, Inc., Adrian Trucking, Inc., Hoker

Trucking, LLC, J&R Transport, Inc., and Holly Little, by and through their undersigned counsel, for

their cause of action against the above-captioned Defendants, state as follows:

### I. PARTIES

1.    Plaintiff Simon's Trucking, Inc. (hereinafter referred to as "Simon") is an Iowa

corporation with its principal place of business in Farley, Iowa.

2.    Plaintiff R.J. Leasing, Inc. (hereinafter referred to as "RJ") is an Iowa corporation with

its principal place of business in Farley, Iowa.

3.    Plaintiff Adrian Trucking, Inc. (hereinafter referred to as "Adrian") is an Iowa

corporation with its principal place of business in Richland, Iowa.

4.    Plaintiff Hoker Trucking, LLC (hereinafter referred to as "Hoker") is an Iowa

corporation with its principal place of business in Dixon, Iowa.

5.    Plaintiff J&R Transport, Inc. (hereinafter referred to as "J&R") is a Wisconsin corporation with its principal place of business in Dickeyville, Wisconsin.

6.    Plaintiff Holly Little ("Little") is a Wisconsin resident who resides in Prairie du Chein, Wisconsin.

7.    Defendant Navistar, Inc. (hereinafter "Navistar") is incorporated under the laws of Delaware, with its principal office in Lisle, Illinois. Defendant Navistar does business throughout Iowa and may be served with process by serving its registered agent CT Corporation System, at 400 East Court Ave, Des Moines, Iowa 50309.

8.    Defendant Thompson Truck and Trailer, Inc. f/k/a Hawkeye Truck and Trailer (hereinafter "Thompson") is incorporated under the laws of Iowa, with its principal place of business in Cedar Rapids, Iowa. Defendant Thompson does business throughout Iowa and may be served with process by serving its registered agent, Dennis Thompson, at 2710 6TH ST SW, Cedar Rapids, Iowa 52404.

9.    Defendant Husky International Trucks, Inc. (hereinafter "Husky") is incorporated under the laws of Washington, with its principal place of business in Tukwila, Washington. Defendant Husky does business throughout Iowa and may be served with process by serving its registered agent, Alexis Patten, at 13123 48th Ave S, Tukwila, Washington, 98168.

10.    Defendant Centre State International Trucks, Inc. (hereinafter "Centre") is incorporated under the laws of Iowa, with its principal place of business in Peoria, Illinois. Defendant Centre does business throughout Iowa and may be served with process by serving its registered agent, CT Corporation System, at 400 East Court Ave, Des Moines, Iowa 50309.

## II. JURISDICTION AND VENUE

11.    The subject matter in controversy is within the jurisdictional limits of this court. This court has jurisdiction over the parties because all Defendants do business in Iowa, including Linn County.

12.    Venue is proper in the Linn County because Defendant Thompson's principal place of business is Linn County and all or a substantial part of the acts or omissions giving rise to this lawsuit occurred in Linn County.

## III. BACKGROUND

13.    Plaintiffs are logistics companies and owners and operators of a commercial trucking fleet and are engaged in the business of hauling general freight across 48 states.

14.    Navistar is a Delaware corporation that manufactures Trucks and other equipment. Navistar manufactures International brand ("International") heavy-duty commercial Trucks and MaxxForce brand ("MaxxForce") diesel engines.

15.    Thompson is an Iowa company that sells and services Navistar Trucks and equipment including International Trucks and MaxxForce diesel engines.

16.    Husky is a Washington company that sells and services Navistar Trucks and equipment including International Trucks and MaxxForce diesel engines.

17.    Centre is an Illinois company that sells and services Navistar Trucks and equipment including International Trucks and MaxxForce diesel engines.

### Defendants' Authorized Dealer Distribution Network

18.    Navistar provides a package of goods and services to buyers of International Trucks with MaxxForce engines by distributing their products through a nationwide network of authorized dealers (the "Navistar Network").

19.    Authorized dealers in the Navistar Network – such as Thompson, Husky, and Centre – act as agents for Defendants in connection with the lease and service of International Trucks with MaxxForce engines.

20.    Upon information and belief, dealers in the Navistar Network rely almost exclusively on materials and training received from Defendants when making representations about International Trucks and MaxxForce engines to their customers.

21.    Defendants regularly provide authorized dealers with International and MaxxForce branded literature, signage, and training materials for use in promoting, selling and financing the lease of their Trucks to customers.

22.    In addition, Defendants routinely hold training seminars for authorized dealers in the Navistar Network.

23.    During these seminars, Defendants coach dealers in the Navistar Network and their sales staff on the best ways to sell International Trucks to customers, including providing detailed comparisons of competing manufacturers' products and outlining the specific information dealers should emphasize when pursuing a sale.

24.    In areas where they lack knowledge, dealers in the Navistar Network are encouraged to visit Navistar's website for additional information.

25.    Potential Navistar customers are also encouraged to visit Navistar's website when seeking information about International Trucks and the MaxxForce engine.

26.    Navistar's website contains informational materials and statements to aid dealers and induce the customer to lease Defendants' products.

27.    In addition, Defendants furnish the actual specifications of each truck including fuel efficiency information, rather than relying on the dealers to generate those details for customers interested in purchasing International trucks.

28.     Upon information and belief, Defendants intend for dealers in the Navistar Network to rely almost exclusively on information provided by Defendants when making representations to potential customers and inducing customers to lease International trucks with MaxxForce engines.

29.     Between December 2011 and December 2012, Plaintiff RJ purchased sixteen (16) International ProStar on-highway semi-trucks from Defendants Navistar, Thompson, and Husky. Plaintiff RJ then subsequently leased the Trucks to Plaintiff Simon for operation in its over the road logistics business.

30.     Between March 2012 and July 2012, Plaintiff Hoker purchased four (4) International ProStar on-highway semi-trucks from Defendants Navistar and Thompson.

31.     Between December 2012 and January 2013, Plaintiff Adrian purchased eleven (11) International ProStar on-highway semi-trucks from Defendants Navistar and Centre.

32.     Between December 2011 and March 2012, Plaintiff J&R purchased twenty (20) International ProStar on-highway semi-trucks from Defendants Navistar and Thompson.

33.     In December 2011, Plaintiff Little purchased one (1) International ProStar on-highway semi-truck from Defendants Navistar and Thompson.

34.     At the time of purchase, the subject Trucks were warranted by Defendant Navistar, Defendant Thompson, Defendant Husky, and Defendant Centre both expressly in writing, impliedly, and orally by Defendants' agents and representatives, to be free from defects in design, material and workmanship. At the time of purchase, Defendants' agents and representatives assured Plaintiffs that the Trucks were in perfect working order and without defects.

35.     However, not long after the purchase of the Trucks, Plaintiffs began to experience numerous breakdowns of the Trucks, specifically the exhaust gas recirculation ("EGR") emission system, EGR coolers, EGR valves, and other components of the Trucks and engines. Defendant Thompson was an agent for Navistar and also assisted in the repairs of the Trucks.

36.     Subsequently, Plaintiffs' Trucks went into service shops, including Defendant Thompson and Defendant Centre to repair problems directly related to these systems and components.

37.     Despite numerous attempts to correct the Trucks' problems by Defendants Navistar, Thompson, and Centre, Defendants have failed to adequately correct the problems.

38.     Plaintiffs were led to believe that each repair or remedy would solve the defect; however Plaintiffs' Trucks continued to be defective.

### Defendants' Representations

39.     Defendant Navistar, through their agents Thompson, Husky, and Centre, and through advertising materials and public statements in trade magazines, repeatedly made representations to Plaintiffs concerning their unique EGR system on the MaxxForce 13-litre engines.

40.     According to representations made to Plaintiffs, Defendants' proprietary EGR system was purportedly certified under the Environmental Protection Agency's ("EPA") 2010 emissions standards for use on heavy-duty commercial Trucks.

41.     Based on their public statements and press releases, it appeared that Defendants were attempting to distinguish themselves from competitors by becoming the only heavy-duty Trucks manufacturer in North America to rely entirely on EGR to meet the EPA 2010 emissions standards.

42.     Defendants' EGR system recirculates the exhaust gas produced by the engine back into the engine to be re-combusted.

43. Other heavy-duty commercial Trucks manufacturers in North America use a combination of EGR and selective catalytic reduction ("SCR"), which requires injecting a chemical after-treatment—a urea based compound known as DEF—into the exhaust gas once it leaves the engine, thereby neutralizing and/or reducing harmful emissions.

44. Defendants were the only manufacturer of heavy-duty commercial Trucks in North America that relied entirely on EGR to meet EPA emissions standards.

45. According to representations made by Defendants to Plaintiffs, the EGR system purportedly provides better "fluid economy" than other brands' combination SCR systems because EGR does not require the use of an after-treatment to neutralize harmful emissions—an additional operating cost that each fleet owner or Trucks driver would have to bear.

46. As a result, Defendants represented to Plaintiffs that the MaxxForce ProStars deliver the "lowest cost of ownership in the industry."

47. Defendant Navistar also represented to Plaintiffs that its engines had met the EPA 2010 emissions standards of .2g NOx and were the only heavy duty engine manufacturer able to do so inside the cylinder.

48. However, based upon information and belief, Defendant Navistar engines never reached the EPA 2010 emissions .2g NOx standards threshold and Defendant Navistar knew that the engines were never going to meet this requirement using EGR only technology.

49. Additionally, as discussed below, Defendants' EGR system was flawed and became one of the most significant and consistent problems with the Trucks.

50. Throughout the course of negotiations, and through advertising materials and trade magazines reviewed by the Plaintiffs, Defendants made several other representations to Plaintiffs that proved to be untrue.

*Plaintiffs' Original Complaint*
#925570

7

51.     Defendants assured Plaintiffs that the Trucks were free from defects and suitable to perform the duties for which they were manufactured.

52.     However, if Plaintiffs did experience problems with the Trucks' operation, Defendants assured Plaintiffs that the expansive Navistar Network would make its certified technicians and quality parts available if repairs were necessary.

53.     Defendants represented to Plaintiffs that MaxxForce ProStars are designed and built to maximize uptime, minimize downtime, and be "always performing."

54.     Defendants represented to Plaintiffs that MaxxForce ProStars had millions of miles of actual road testing and years of simulated testing to provide road-ready Trucks from the day of purchase. Navistar claimed this testing had solved any serious issues or defects with the design, the components, the materials, and the workmanship of the system prior to officially launching the vehicle in 2010.

55.     Defendants Thompson, Husky, and Centre, acting as Defendants' agent, relayed much of the above-described representations directly to Plaintiffs. This information was also relayed in advertising materials and trade magazine interviews with Navistar employees which Plaintiffs received and reviewed prior to their purchase of the Trucks.

56.     Upon information and belief, Plaintiffs assert that Defendant Navistar made the above representations either directly or through Thompson, Husky, and Centre with the intention of inducing Plaintiffs to purchase the Trucks.

57.     According to their public filings, Defendants spend close to $30 million per year on advertising intended to reach customers and induce them to lease Defendants' products.

58.     Relying upon Defendants' representations reflected herein, Plaintiffs made the aforementioned purchases of the International ProStar on-highway semi-Trucks, from Defendants Navistar, Thompson, Husky, and Centre.

59.     Upon information and belief, one of the most significant problems with Defendant's EGR system is that the continuous recirculation of exhaust gas back into the engine reduces the engine's efficiency and causes soot, both of which adversely affect the components of the EGR system and engine. The material used in the EGR system and engine was not able to withstand the excessive soot and heat. The workmanship failed to provide an EGR system and engine that could handle excessive heat and soot. The design of the EGR system could not handle the excessive heat and soot.

60.     Plaintiffs were repeatedly forced to take the Trucks in to the Navistar Network for repairs due to indications that the engine was overheating, derating and had clogging up of various components.

61.     During the time that Plaintiffs purchased the Trucks, they were in the shop for warrantied repairs on numerous occasions, not including other routine maintenance required for commercial heavy-duty Trucks.

62.     The problems Plaintiffs experienced with the Trucks that required taking the Trucks into the Navistar Network for repairs included, but are not limited to:

      a.    Repeated instances of check engine lights illuminating;

      b.    Engine derating;

      c.    EGR system failure, including but not limited to:

            i.    EGR sensor failure;

            ii.    full replacement of the EGR valve and cooler system;

            iii.    cooling system failures causing the engine to overheat;

     iv.     other problems or failures specifically related to the EGR system;

     v.     EGR plugging;

     vi.     EGR cracking/leaking;

     vii.     EGR valve problems;

     viii.     Turbo failures; and

     ix.     Need for recalibration

d.     Fuel pump failures;

e.     A/C blower and compressor failures;

f.     Hoses and connections becoming clogged or prematurely worn;

g.     Other issues that prevented the Trucks from functioning as warranted.

63.     To compound the problem, Plaintiffs were repeatedly delayed in getting the Trucks back into operation after they had been in the shop for maintenance and/or repairs, by Defendants' inability or unwillingness to promptly provide certified technicians and necessary parts at service locations in the Navistar Network.

64.     Based upon information and belief, on many occasions the parts needed to complete the repairs to Plaintiffs' Trucks were on national back order and/or unavailable which contributed to the substantial delays in the repairs.

65.     In fact, on several occasions Plaintiffs were forced to wait days for necessary repairs.

66.     Due to the Trucks' demonstrated lack of utility, its failure to meet – much less exceed – the reliability and performance criteria described in the representations made at the time of lease and the exceedingly large amount of down-time for repairs, Plaintiffs suffered significant damages as described herein.

**Defendants' Knowledge of Problems with MaxxForce ProStars and MaxxForce engines**

67.     Upon information and belief, prior to Plaintiffs' purchase of the Trucks, Defendants became aware that the MaxxForce ProStar truck line was woefully inadequate for public distribution.

68.     According to industry standards, heavy-duty commercial trucks engines require extensive testing for years before public distribution in order to work out any issues with design, material defects and/or workmanship.

69.     Manufacturers of heavy-duty commercial trucks engines run the engines in controlled conditions for thousands of hours in order to simulate actual driving conditions. Manufacturers are also required to run extensive field or "real world" testing.

70.     As a result of this extensive testing, manufacturers obtain large amounts of data regarding problems associated with the engine performance.

71.     Upon information and belief, Defendants were able to accurately predict the exact types of problems that would occur with MaxxForce engines.

72.     Upon information and belief, Defendants knew that the MaxxForce powered ProStars had significant and documented problems associated with the MaxxForce engines and concealed this information from the public and Plaintiffs. Further, upon information and belief, Defendant did not adequately and thoroughly test its engines prior to release.

73.     Upon information and belief, Defendant Navistar knew that the MaxxForce engines never met the .2g NOx threshold in a commercially viable "real world" setting, and never would meet this threshold, and concealed this information from the public and Plaintiffs.

74.     Upon information and belief, Defendant Navistar knew as early as 2010 that its EGR-only technology was "still maturing" and concealed this information from the public and Plaintiffs. Upon information and belief, Defendant Navistar knew that by mid-2011 the MaxxForce engines were

experiencing significant warranty claims increases and concealed this information from the public and Plaintiffs.

75.     Upon information and belief, Defendant Navistar knew that it was only able to sell MaxxForce engines using "banked" emissions credits and concealed this information from the public and Plaintiffs.

76.     However, in February 2012, Defendant Navistar ran out of "banked" emissions credits and was notified by the EPA that it would be fined as much as $37,500 per violation, or up to $285 million, for shipping thousands of back-dated engines during the 2010 engine transition.

77.     Nevertheless, upon information and belief, Defendants proceeded to manufacture and distribute the MaxxForce ProStars while continuing to make false representations to the public and to Plaintiffs regarding the performance capabilities, reliability, EPA certification, and Defendant Navistar's commitment to the MaxxForce engine that Defendant knew to be false.

78.     Finally, in July of 2012, Defendant Navistar made a public announcement that it was no longer going to produce 11-liter and 13-liter engines with EGR-only systems, but rather they would be switching to combination SCR systems. Defendant also announced that they were ceasing production entirely on their EGR- only 15-liter engine.

79.     As a result of the above-described acts and/or omissions, Plaintiffs were forced to institute this legal proceeding to recover for their injuries resulting from Defendants' breach of warranty (all warranties, both written and oral, provided to Plaintiffs at any time by Defendants), breach of contract, fraud, and conspiracy in connection with the purchase of the Trucks.

80.     As a direct and proximate result of Defendants' above-described conduct, Plaintiffs suffered financial loss and other damages, including, but not limited to:

        a.      Loss of profits;

b.    Downtime expenses and losses;

c.    Diminished resale value on the Trucks;

d.    Out-of-pocket repair expenses;

e.    Fuel expenses incurred in excess of the represented amounts;

f.    Towing expenses;

g.    Lodging expenses for Plaintiffs' drivers;

h.    Rental car expenses, including fuel for same;

i.    Unreimbursed driver downtime;

j.    Loss of revenue; and

k.    Other economic, financial, consequential and incidental damages allowed by law or equity.

### IV.

### CAUSES OF ACTION

81.    Plaintiffs incorporate the factual allegations described above by reference for the causes of action below.

### COUNT I

### BREACH OF EXPRESS WARRANTY

82.    Plaintiffs brings a cause of action for breach of an express warranty against Defendants for representing to Plaintiffs that the Trucks were of a particular quality when, in fact, they were not.

83.    Defendant Navistar produced and manufactured the Trucks, which were ultimately sold by Defendants Thompson, Husky, and Centre to Plaintiffs.

84.    During the negotiations leading up to purchasing the Trucks, Defendants made the above described representations through its agent to Plaintiffs.

85.    Defendants expressly assured Plaintiffs that the Trucks were free from defects and were suitable to perform the duties for which they were manufactured and sold.

86.    Defendants expressly assured Plaintiffs they had an extensive network of service centers that would promptly provide parts and trained technicians needed to fix any problems experienced by Plaintiffs with the Trucks.

87.    Plaintiffs relied on the above-described representations from Defendants in making its decision to purchase the Trucks.

88.    Plaintiffs repeatedly notified all Defendants and their agents of the defects related to the Trucks and their MaxxForce engines, but Defendants failed and/or refused to make repairs sufficient to correct the defects. During the negotiations leading up to purchasing the Trucks, Navistar made the above described representations through its agents, Defendant Thompson and Husky, to Plaintiffs.

89.    As a proximate result of Defendants breach of express warranty (all warranties both orally and written provided to Plaintiffs at any time by Defendants), Plaintiffs have suffered financial loss and other damages within the jurisdictional allowances of this Court, including, but not limited to:

a.    Loss of profits;

b.    Downtime expenses and losses;

c.    Diminished resale value on the Trucks;

d.    Out-of-pocket repair expenses;

e.    Fuel expenses incurred in excess of the represented amounts;

f.    Towing expenses;

g.    Lodging expenses;

h.    Rental car expenses, including fuel for same;

i.    Unreimbursed driver downtime;

j.    Loss of revenue; and

k.    Other economic, financial, consequential and incidental damages allowed by law or equity.

## COUNT II

## BREACH OF IMPLIED WARRANTY

90.    In addition, or in the alternative, Plaintiffs brings a cause of action for breach of an implied warranty against Defendants, for impliedly representing to Plaintiffs that the Trucks were of a particular quality when, in fact, they were not.

91.    Defendants impliedly assured that the engines they sold to Plaintiffs were free from defects and were suitable to perform duties for which they were manufactured and made. However, the trucks purchased by Plaintiffs were defective at the time they were purchased by Plaintiffs. Consequently, Defendants breached the implied warranty of merchantability as well as the implied warranty that the Trucks and engines were fit for the particular purpose for which they were purchase, which was to be used by Plaintiffs in their trucking businesses as revenue earning on-highway trucks.

92.    Defendants were notified and knew of the purpose for which Plaintiffs were purchasing the Trucks.

93.    Plaintiffs relied upon the aforementioned implied assurances made Defendants in making their purchases of the Trucks.

94.    Defendants Thompson and Centre, also as the dealers for repairs on the Trucks, also impliedly assured that the repairs to the engines would be completed in a good and workmanlike manner, however the engines failed to be properly repaired within a reasonable amount of time, and the defects were not remedied. Thus, Defendants Thompson and Centre have breached the implied warranty of good and workmanlike performance applicable to the repair services of their engines.

Case 1:16-cv-00205-MWB-KEM   Document 2-1   Filed 12/15/16   Page 18 of 32

95.   Defendant Navistar produced and manufactured the Trucks, which were ultimately purchased by Plaintiffs.

96.   During the negotiations leading up to purchasing the Trucks, Defendant Navistar through its agents made the above described representations to Plaintiffs. Further, Defendant Navistar impliedly assured Plaintiffs that the Trucks were merchantable.

97.   Plaintiffs ultimately discovered that the Trucks were not merchantable and had significant problems, as discussed above, and including, but not limited to:

   a.   Repeated instances of check engine lights illuminating;

   b.   Engine derating;

   c.   EGR system failure, including but not limited to:

      i.   EGR sensor failure;

      ii.   full replacement of the EGR valve and cooler system;

      iii.   cooling system failures causing the engine to overheat;

      iv.   other problems or failures specifically related to the EGR system;

      v.   EGR plugging;

      vi.   EGR cracking/leaking;

      vii.   EGR valve problems;

      viii.   Turbo failures; and

      ix.   Need for recalibration

   d.   Boost control solenoid failing;

   e.   Retarder control valve leaking;

   f.   Hoses and connections becoming clogged or prematurely worn;

   g.   Reduced fuel efficiency; and

h.    Other issues that prevented the Trucks from functioning as warranted.

98.    Plaintiffs relied on the above-described representations from Defendants in making its decision to purchase the Trucks. Plaintiffs repeatedly notified Defendant Thompson and Centre of the defects related to the Trucks and their MaxxForce engines, but Defendant Thompson and Centre failed and/or refused to make repairs sufficient to correct the defects.

99.    Plaintiffs have performed all obligations due to Defendants pursuant to the purchase and repair of the Trucks and under the implied warranty, except for those obligations, if any, which have been excused by Defendants' breach of the warranty. As a proximate result of Defendants' breach of warranty, for the reasons set forth above, Plaintiffs has suffered financial loss and other damages within the jurisdictional allowances of this Court, including, but not limited to:

a.    Loss of profits;

b.    Downtime expenses and losses;

c.    Diminished resale value on the Trucks;

d.    Out-of-pocket repair expenses;

e.    Fuel expenses incurred in excess of the represented amounts;

f.    Towing expenses;

g.    Lodging expenses;

h.    Rental car expenses, including fuel for same;

i.    Unreimbursed driver downtime;

j.    Loss of revenue; and

k.    Other economic, financial, consequential and incidental damages allowed by law or equity.

## COUNT III

### BREACH OF CONTRACT

100.    In addition, or in the alternative, Plaintiffs brings a cause of action for breach of contract against Defendants Navistar, Thompson, Husky, and Centre in that Defendants Navistar, Thompson, Husky, and Centre failed to provide Trucks free from defects in accordance with the terms of the agreement.

101.    Plaintiffs entered into valid, enforceable contracts with Defendants.    Defendants Thompson, Husky, and Centre acted as the dealers for sales and repairs on the Plaintiffs' Trucks. The aforementioned contracts obligated Plaintiffs to purchase and Defendants to provide the Trucks free from defects (the "Agreements"). Plaintiffs entered into enforceable contracts with Defendants for the purchase of the vehicles.  Attached as Exhibit "A" are portions of the documents that constitute Agreements that were in the possession of Plaintiffs. The remaining documents comprising the entirety of the Agreements are in the sole possession of Defendants and will be attached upon receipt from Defendants.

102.    Defendants breached the Agreements by failing to provide Trucks that were free from defects in accordance with the terms of the Agreements.

103.    Defendants also breached their agreements with Plaintiffs by providing defective Trucks and failing to make reasonable repairs. Specifically, Defendants breached the contract with Plaintiffs because the Trucks they provided to Plaintiffs at the time of purchase contained defects. Plaintiffs contracted with Defendants for the sale of non-defective Trucks; however, Defendants breached this contract when it sold Plaintiffs trucks that contained defects.

104.    Plaintiffs also entered into service/repair contract with Defendants Thompson and Centre, respective to repairs of the subject engines. Plaintiffs performed its contractual obligations by

Case 1:16-cv-00205-MWB-KEM   Document 2-1   Filed 12/15/16   Page 21 of 32

tendering the Trucks to Defendants for repairs. Defendants Thompson and Centre breached the contracts to repair the Trucks when it failed to correct the defects in the Trucks when Plaintiffs brought them to its repair shops.

105.    Defendants had legally enforceable obligations to Plaintiffs, and Defendants violated or breached those obligations, as described herein. Defendants' breaches were material.

106.    As a result of Defendants' breach of contract and breaches of their obligations, Plaintiffs has suffered financial loss and other damages in an amount subject to proof at the time of trial, but estimated to be in excess of the jurisdictional minimum of this court.

107. Plaintiffs have performed all obligations due to Defendants pursuant to the contracts, except for those obligations, if any, which have been excused by Defendants' breach of the contracts.

## COUNT IV

### ACTUAL FRAUD / FRAUD BY NONDISCLOSURE / FRAUDULENT CONCEALMENT / FRAUDULENT INDUCEMENT

108.    In addition, or in the alternative, Plaintiffs brings a cause of action for actual fraud, fraud by nondisclosure, fraudulent concealment, and fraudulent inducement against Defendants for knowingly making false representations of material fact to Plaintiffs in connection with the purchase of the Trucks. All previous paragraphs are incorporated as if fully set forth herein in this section related to Plaintiffs' cause of action of fraud.

109.    Defendant Navistar, through its marketing (including marketing materials in trade publications and the internet) as well as through its Dealer Network and associated agents, made false representations of material facts, which were made intentionally and knowingly with the intent to mislead Plaintiffs, on which Plaintiffs relied, and which resulted in damages to the Plaintiffs. Further, Defendant Navistar made the material false representations set forth herein, which Plaintiffs believed

to be true, and which was meant to be acted on by Plaintiffs (by purchasing or leasing the Trucks), and as a result Plaintiffs sustained damages.

110. Plaintiffs received and reviewed the aforementioned trade publications, marketing materials, and internet articles and relied upon the false representations made therein in making their purchase of the Trucks.

111. From September 2011 – September 2012, which were the months leading up to the purchase of the Trucks (which occurred Between December 2011 and November 2012), Defendant Navistar's agents, including but not limited to its management and dealer sales representative and Defendants Thompson, Husky, and Centre provided Plaintiffs with false information regarding the Trucks, including by not limited to the Trucks' performance capabilities, fuel economy, the effectiveness and durability of the Trucks' EGR system, the Trucks' overall fitness for use, the adequacy of its pre-launch testing, the ability to meet 2010 EPA emissions certification with a commercially viable vehicle that would work in the "real world," as well as representations revealed in discovery responses (the "Misrepresentations").

112. Plaintiffs relied upon the Misrepresentations in their purchase of the Trucks because the 2010 regulations required a new and reduced NOx emissions level that no diesel engine manufacturer had achieved prior to 2010. To meet the new requirements diesel engine manufacturers had to implement new emissions technologies. Navistar chose an engine technology (Advanced EGR) that differed from all other diesel engine manufacturers (SCR). Performance, fuel economy, operating costs, and reliability are significant factors that Plaintiffs take into consideration when purchasing trucks and the Misrepresentations were relied upon by Plaintiffs in their purchase of the Trucks over competitors' trucks.

*Plaintiffs' Original Complaint*
#925570

20

113.    Defendants Navistar, Thompson, Husky, and Centre's specific Misrepresentations included the following material representations to Plaintiffs, upon which Plaintiffs relied in connection with the purchase of the Trucks:

a.    The MaxxForce EGR system provides better "fluid economy" than other brands' selective catalytic reduction (SCR) system;

b.    MaxxForce ProStars deliver the "lowest cost of ownership in the industry";

c.    The Trucks were free from defects and were suitable to perform the duties for which they were manufactured and sold;

d.    Defendants offer an expansive network of MaxxForce ProStar certified technicians and quality parts that would be available to make repairs;

e.    MaxxForce ProStars and MaxxForce engines are built for performance, reliability, and durability;

f.    MaxxForce ProStars and MaxxForce engines are built to maximize uptime, minimize downtime and be "always performing";

g.    MaxxForce ProStars and MaxxForce engines had gone through a rigorous and acceptable level of testing involving millions of miles of actual road testing and years of simulated testing to provide road ready Trucks from the day of purchase and Navistar had worked out/resolved all major issues during testing prior to launching the 2010 model;

h.    The MaxxForce engines were EPA 2010 certified;

i.    The MaxxForce engines had met the .2g NOx emissions in a commercially viable truck and/or had no issues with meeting .2 NOx with a commercially viable vehicle that would operate in the "real world";

j.    The MaxxForce engines provided better fuel economy that its competitors; and

k.    The design of the EGR System to meet the 2010 regulations was "mature," "proven," and not a "new technology."

114.    110.    Upon information and belief, Defendant Navistar knew that the Misrepresentations were false when they were made.

115.    Upon information and belief, the Misrepresentations were made by Defendant Navistar to their agents including, Defendants Thompson, Husky, and Centre with the intent that Thompson, Husky, and Centre would pass along the Misrepresentations to potential buyers, including the Plaintiffs.

116.    These Misrepresentations were also made directly by Navistar in advertising materials from 2009 – 2012 in popular transportation magazines such as Transport Topics and Heavy Duty Trucking, and in public statements by upper management, including, but not limited to, Dan Ustian, Jim Hebe, Jack Allen, and Ramin Younessi, which were viewed and relied upon by Plaintiffs.

117.    Defendants Thompson, Husky, and Centre did, in fact, make the Misrepresentations set forth above to Plaintiffs regarding the Trucks with knowledge of their falsity.

118.    Upon information and belief, the Misrepresentations were also made by Defendant Navistar to their agents, Defendants Thompson, Husky, and Centre with the intent that Defendants Thompson, Husky, and Centre would pass along the Misrepresentations to truck owners, including the Plaintiffs, whose trucks were being repaired and serviced by dealers like Defendant Thompson and Husky.

119.    If Plaintiffs had known the true facts, Plaintiffs would not have purchased any Trucks from Defendants, and Plaintiffs would not have continued to permit Defendants Thompson and Centre

to work on and attempt to repair these defective trucks all the while keeping Plaintiffs' trucks out of service.

120. At the time Defendants made the above-described Misrepresentations, Defendants knew the Misrepresentations were false and/or made the Misrepresentations recklessly, as positive assertions, without knowledge of their truth.

121. Defendants made the above-described Misrepresentations with the intent that Plaintiffs rely on the Misrepresentations in making the decision to purchase the Trucks, and thus fraudulently induced Plaintiffs to purchase the Trucks.

122. Additionally, Defendants Thompson and Centre made the above-described Misrepresentations with the intent that Plaintiffs rely on the Misrepresentations in making the decision to allow Thompson and Centre to service and repair the Trucks.

123. As a proximate result of Defendants' fraudulent Misrepresentations to Plaintiffs, as set forth herein, Plaintiffs have suffered financial loss and other damages, including, but not limited to:

      a.    Loss of profits;

      b.    Downtime expenses and losses;

      c.    Diminished resale value on the Trucks;

      d.    Out-of-pocket repair expenses;

      e.    Fuel expenses incurred in excess of the represented amounts;

      f.    Towing expenses;

      g.    Lodging expenses;

      h.    Rental car expenses, including fuel for same;

      i.    Unreimbursed driver downtime;

      j.    Loss of revenue; and

k.    Other economic, financial, consequential, incidental and exemplary damages allowed by law or equity.

## COUNT V

### CONSTRUCTIVE FRAUD / NEGLIGENT MISREPRESENTATION

124.    In addition or in the alternative, Plaintiffs bring a cause of action for constructive fraud or negligent misrepresentation against Defendant Navistar for withholding material information, otherwise unavailable to Plaintiffs, necessary to correct the false impression created by Defendant Navistar. Plaintiffs incorporates all prior paragraphs regarding representations and fraud committed by Navistar as if fully set forth herein in this section.

125.    Upon information and belief, Plaintiffs asserts that Defendant Navistar knew that the MaxxForce engine with the EGR cooling system had inherent performance and reliability problems (the "Known Defects") at the time Plaintiffs purchased the Trucks.

126.    Upon information and belief, Plaintiffs asserts that Defendant Navistar knew as early as 2010 that the MaxxForce engine with the EGR cooling system would never meet the 2010 EPA 0.2g NOx emissions regulations.

127.    Upon information and belief, Plaintiffs assert that Defendant Navistar knew as early as 2008 that the MaxxForce engine with the EGR cooling system had severe technical problems that would lead to engine performance and quality issues, including heat, soot, and condensation issues. These issues and problems continued to exist throughout the testing and into the launch of the truck.

128.    Upon information and belief, Navistar knew its engine testing had been inadequate and truncated, late in starting, causing late design changes, immature designs and increased warrant risk. Navistar failed to reveal these things while making representations that it had conducted millions of

miles of real world testing that had worked out all reliability, durability and quality issues with the engine and EGR system.

129. Defendant Navistar concealed and/or failed and/or refused to disclose Known Defects to Plaintiffs.

130. Upon information and belief, Defendant Navistar knew that Plaintiffs were ignorant of the Known Defects associated with the MaxxForce powered ProStars.

131. Furthermore, Plaintiffs did not have an equal opportunity to discover the Known Defects until after purchasing and operating the Trucks.

132. Upon information and belief, Defendant Navistar deliberately withheld the information about the Known Defects associated with the MaxxForce powered ProStars when they had a duty to disclose the information to Plaintiffs.

133. By failing to disclose the Known Defects to Plaintiffs, Defendant Navistar induced Plaintiffs to purchase the Trucks and to continue those contracts and payments.

134. Plaintiffs, relying on the Misrepresentations made by Defendant Navistar, purchased the Trucks and continued those contracts and payments.

135. As shown, this was done through Defendant Navistar's representatives at the time of purchase, as well as through public advertising, interviews, and press releases.

136. As it turns out, the representations were not true and Plaintiffs justifiably relied on these representations to their detriment in that Plaintiffs purchased Defendant Navistar's trucks that were defective when they could have purchased trucks from another manufacturer that were not defective.

137. As a result of Defendants negligent misrepresentations, as set forth above, Plaintiffs suffered financial loss and other damages. As a proximate result of Defendant Navistar's fraud by nondisclosure, Plaintiffs have suffered financial loss and other damages within the jurisdictional allowances of this Court, including, but not limited to:

a.   Loss of profits;

b.   Downtime expenses and losses;

c.   Diminished resale value on the Trucks;

d.   Out-of-pocket repair expenses;

e.   Fuel expenses incurred in excess of the represented amounts;

f.   Towing expenses;

g.   Lodging expenses;

h.   Rental car expenses, including fuel for same;

i.   Unreimbursed driver downtime;

j.   Loss of revenue; and

k.   Other economic, financial, consequential, incidental and

exemplary damages allowed by law or equity.

## UNCONSCIONABILITY OF ALL WARRANTY DISCLAIMERS AND LIMITATIONS OF REMEDIES/DAMAGES

138.   Defendants' acts have rendered all exclusive or limited express warranties inapplicable because they have failed their essential purpose in that no amount of repair has been able to remedy the defects in Plaintiffs' Trucks, as even if Defendants exercised good faith, Defendants did not (and could not) fulfill within a reasonable time their obligation to replace or completely repair the equipment if furnished. Additionally, or in the alternative, any and all attempts to limit the damages and remedies available to Plaintiffs in any agreement, Defendants' actions as expressed herein make all such attempted limitations unconscionable.

139.   Specifically, Defendants' withholding of critical information shows the unfairness which tainted the negotiation process between these parties, as Defendants specifically misled

Plaintiffs as to the basis of the bargain between the parties and no voluntary meeting of the minds was possible with respect to the inconspicuous attempts at limiting remedies/damages. Defendants acted with deception both substantively and procedurally and as such the attempted limitation of damages and remedies by Defendants is outrageous.

140.    Additionally, Defendants acted in an unfair and grossly unfair manner as described herein, by failing to act with good faith as Defendants did not proceed with honesty in fact and the observance of reasonable commercial standards of fair dealing. The inequality between Defendants and Plaintiffs was so gross as to shock the conscience. The purchase of the Trucks based on the fraud of Defendants created a transaction that Plaintiffs, had it not been under the delusion created by Defendants, would not have entered into.

141.    In addition to the misrepresentations by Navistar (as previously set forth herein), with regard to Defendants Thompson and Centre, these Defendants failed to act with good faith by continuing to reassure Plaintiffs that the Trucks were capable of being fixed, when in fact they were not.

142.    Defendants Thompson and Centre also acted unconscionably when it provided information (which had been provided to Thompson and Centre by Navistar) to Plaintiffs setting forth numerous factual misrepresentations (as fully set forth herein). This renders Defendants' attempted limitation of remedies and disclaimers void due to the unconscionability of the provisions when coupled with the acts/knowledge of the Defendants.

143.    Plaintiffs are entitled to recover all actual and economic damages, including all consequential and incidental damages listed herein, from Defendants because all exclusive or limited express warranties have failed in their essential purpose, and all attempted limitations of remedies/damages are unconscionable.

## CONDITIONS PRECEDENT

144.    All conditions precedent to recovery by Plaintiffs have been complied with.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that they recover from Defendants, jointly and severally, actual damages, exemplary damages, statutory penalties, pre-judgment interest, post judgment interest, attorney's fees, costs and such other relief to which Plaintiffs may be justly entitled, including but not limited to:

1.    All actual damages sued for herein;

2    Attorneys' fees as allowed by law;

3.    Pre and post-judgment interest;

4.    Treble Damages; and

5    All other relief to which Plaintiffs are entitled.

## JURY DEMAND

Plaintiffs requests that this case be decided by a jury as allowed by Iowa law.

Respectfully submitted,

RICCOLO & SEMELROTH, P.C.

By:_____

**TIM SEMELROTH**
State Bar No. AT0007057
**JOHN RICCOLO**
State Bar No. AT0006656

Suite 1140, Plaza 425
425 Second Street SE
Cedar Rapids, Iowa 52401
(319) 365-9200
(319) 365-1114 (Facsimile)

and

**MILLER WEISBROD, LLP**
11551 Forest Central Drive
Forest Central II, Suite 300
P. O. Box 821329 (75382)
Dallas, Texas 75243
(214) 987-0005
(214) 987-2545 (Facsimile)

**CLAY MILLER,** *pro hac vice pending*
Texas State Bar No. 00791266
cmiller@millerweisbrod.com
**WARREN M. ARMSTRONG,** *pro hac vice pending*
Texas State Bar No. 24044432
warmstrong@millerweisbrod.com
**ROBERT E. WOLF,** *pro hac vice pending*
rwolf@millerweisbrod.com
Texas State Bar No. 24028234

**ATTORNEYS FOR PLAINTIFFS**